EBEN A. HOLMES, and others,

*vs.*

HENRY A. BALCOM.

Washington.    Opinion February 2, 1892.

*Attachment.    Notice of claim.    Lien.    Carrier.    R. S., c. 81, § § 43, 44, 45, 46.*

The notice of claim upon goods attached, as provided in R. S., c. 81, § 44, is not required to be given to the attaching officer before the goods are sold by him.

When a consignee has a lien for advances upon goods on board ship, which are taken from the ship by an attaching officer on a writ against the consignor without tendering to the carrier or the consignee the amount of the lien, the carrier may maintain an action therefor against the officer.

ON REPORT.

This is an action on the case against the sheriff of Washington county to recover the value of eighty-two cases of sardines of the alleged value of more than four hundred and fifty dollars, attached August 17, 1888, on a writ against one Peter M. Kane in favor of Hiram Blanchard, and others, returnable to the October term, 1888, of this court, for said county, wherein damages were claimed to the amount of one thousand two hundred and thirty-two dollars and sixty cents.

It appeared that the plaintiffs were the owners of the schooner George P. Trigg, enrolled and licensed by the United States, then lying at the port of Eastport in said county, and that the sardines had been delivered on board the schooner by said Kane, for which a bill of lading had been given therefor, to be delivered to Hansen and Dieckman, merchants in New York City, or their assigns, which bill had been mailed to their address by Kane with notice that the same had been drawn against for the sum of four hundred and fifty dollars, and that the draft had been discounted at the bank in Eastport, and in due course was presented to Hansen and Dieckman and accepted by them August fourteenth, and afterwards paid by them.

It appeared that thereafterwards said sardines, while in the hold of said vessel, were attached on said writ and taken therefrom without the assent of the owners of said vessel, by Henry Whelpley, the defendant's deputy, who then tendered the payment of the freight thereon, which was then refused by the owners of said vessel (and subsequently, April 14, 1889, was tendered and refused) ; that the writ was entered in court at the return term thereof; and in regular course defaulted, but that before judgment was entered, payments had been made upon the claim sued in said writ, so that the same was reduced to eight hundred and seven dollars and sixty cents, for which judgment was entered, and for costs amounting to sixty-two dollars and thirty-nine cents, in the whole amounting to eight

hundred and sixty-nine dollars and ninety-nine cents; that thereafterwards, on the fifteenth day of October, 1888, execution issued upon said judgment, and on the twenty-ninth of the same October, said officer sold eighty-one cases of said sardines together with other property of said Kane attached on said writ, to the amount of one thousand three hundred and eleven dollars and ninety-five cents, with which the officer satisfied said execution together with the costs of keeping and sale amounting to seventeen dollars and ninety-three cents, leaving a balance in his hands of four hundred and twenty-four dollars and three cents, which, in the course of about one month, he returned and paid to said Kane.

It appeared that said Hansen and Dieckman, the consignees in the bill of lading and drawees and acceptors in said draft, after said attachment, upon the arrival of said schooner in the port of New York, libeled the same for the non-delivery of the sardines according to the terms of said bill of lading, and that said libel, having been considered in the District Court for the Southern District of New York, and carried thence by appeal to the Circuit Court for that Circuit, was finally decided, and the owners of said schooner, who were the claimants in said cause, were decreed liable to said Hansen and Dieckman, for the amount of the draft; to wit., for the sum of four hundred and fifty dollars damages, thirty dollars and fifteen cents interest, and thirty-five dollars and five cents costs of the District Court, together with the sum of thirty-eight dollars and thirty cents costs of the Circuit Court, making, in all, the sum of five hundred and fifty-three dollars and fifty cents, and that the said schooner be condemned therefor; which said decree and judgment was thereafterwards, on the same day, satisfied and paid by the said claimants, to wit., the plaintiffs in this case. The report of the case in the Admiralty Court, may be found in 37 Fed. Reporter, p. 708. Prior to the bringing of this suit the plaintiffs gave written notice and made a demand upon the said defendant and his deputy, under R. S., c. 81, § 44.

The value of said eighty-two cases of sardines at the time they were attached was four hundred and seventy-one dollars and fifty cents.

The material parts of the written notice and demand, after reciting the preliminary facts, are as follows :    .   .   .

"Now, therefore, in accordance with the statute in such case made and provided, you are hereby notified that the property attached by said Henry Whelpley on the writ aforesaid, is claimed by us, the owners of said vessel, by virtue of the pledge and lien aforesaid, and the amount due us thereon is as follows, to wit. :

" 1. The said sum of four hundred fifty dollars and interest thereon from the twenty-second day of said August.

" 2. Freight as aforesaid, to wit., said sum of nine dollars and eighty-four cents.

"So, that the true amount of all the same, with interest to the day of the date hereof, is five hundred three dollars and seventy-nine cents.

"And we hereby demand of you, that within forty-eight hours after you receive this written notice, you discharge our claims as aforesaid, by paying the true amount thereon, to wit., said sum of five hundred three dollars and seventy-nine cents, or restore said property.

"Dated at Eastport this eighth day of April, eighteen hundred ninety.

By  W. L. Putnam,

"Attorney for the owners of the schooner, George P. Trigg."

The statute under which notice was thus given and demand made is as follows (R. S., c. 81, § 44) :   "When personal property, attached on a writ or seized on execution, is claimed by virtue of such mortgage, pledge or lien, the claimant shall not bring an action against the attaching officer therefor, until he has given him at least forty-eight hours' written notice of his claim and the true amount thereof; and the officer or creditor may, within that time, discharge the claim by paying or tendering the amount due thereon, or he may restore the property."

The defendant in his brief statement of special matters of defense, denied that any written notice, &c., had been made on him before the sale on execution ; and further alleged that the plaintiffs had no lien on the fish.

*W. L. Putnam*, for plaintiffs.

*N. & H. B. Cleaves, S. C. Perry, A. MacNichol* and *E. E. Livermore*, with them, for defendant.

Plaintiffs failed to protect the absent consignees and upon this ground the Trigg was held liable to the consignees for non-delivery of the goods. They had the power to give notice under R. S., c. 81, § 44. The purpose of the statute in requiring written notice of the claim and the true amount thereof, is to enable the attaching creditor to know definitely what the lien may be. The information called for is important, not merely as fixing the sum to be paid, but also as assisting the creditor in determining whether the lien is claimed in good faith, and whether it will be valuable to him if he retains his attachment and takes to himself the benefit of such lien by discharging the same. *Wilson* v. *Crooker*, 145 Mass. 571. An officer by attaching chattels and taking them into his custody, becomes personally chargeable with their value. *Phillips* v. *Fields*, 83 Maine, 350; *Fairfield Bridge Co.* v. *Nye*, 60 *Id.* 372, 379. The legislature had in view the protection of the officer as well as the claimant, and the statute distinctly provides that "The officer or creditor may  .  . discharge the claim by paying or tendering the amount due thereon, or he may restore the property." Meaning that the officer may restore the property, the statute contemplating that the demand shall be made while the officer is in custody of the property and before the sale of the same on the process which he holds. The statute also contemplates that the claimant shall be vigilant in the assertion of his rights, and that he shall not permit the rights of the creditor or the attaching officer to be prejudiced by his delay.

Where property is taken from the carrier by legal process and he gives due notice of the taking to the shipper, owner or consignee as the case may be, he is discharged. *Wells* v. *Maine Steamship Co.* 4 Cliff. 228; *Edwards White Line Transit Co.* 104 Mass. 159. The time has passed for plaintiffs to assert any rights against defendant. They knew or ought to have known all the facts when the attachment was made. They allowed the officer to go on and make sale on execution. They

waived their rights under the statute by resorting to their remedy in the Admiralty Court and permitting sale by the officer. *Copeland* v. *Copeland*, 28 Maine, 539; *Nichols* v. *Perry*, 58 *Id*. 32. By giving regular notice of the attachment they would have been discharged from their obligations. *Blivin* v. *Hudson River R. R. Co*. 36 N. Y. 403; *Stiles* v. *Davis*, 1 Black, 101. Notice should be given while the officer holds the property under attachment. No time being fixed by the statute, it must be a reasonable time. *Saunders* v. *Curtis*, 75 Maine, 493. Counsel also cited: *Brackett* v. *Bullard*, 12 Met. 308; *Sullivan* v. *Lamb*, 110 Mass. 169; *Ramsdell* v. *Tewksbury*, 73 Maine, 198; *Granger* v. *Kellogg*, 3 Gray, 490. Subrogation: *Gadsden* v. *Brown*, Speer's Eq. (S. C.) 37–41; *Hall* v. *R. R. Co*. 13 Wall. 370; Shel. Subrog. pp. 278, 280–284.

Estoppel: *Pickard* v. *Sears*, 6 A. & E. 469; *Piper* v. *Gilmore*, 49 Maine, 153; *Rangely* v. *Spring*, 21 *Id*. 130; *Cummings* v. *Webster*, 43 *Id*. 194. Plaintiffs were held liable to Hansen and Dieckman expressly and solely on the ground of their own laches and neglect to promptly notify them and to take the steps provided by laws of Maine, in notifying the attaching officer of the lien of Hansen and Dieckman, and in neglecting to institute legal proceeding to protect their interest in the goods. Such neglect and laches cannot give plaintiffs a valid pledge or lien, and be a legal foundation for their claim here against this sheriff. It is settled that common carriers cannot stipulate for exemption from liability for losses occasioned by the negligence of themselves or their servants. *Willis* v. *Grand Trunk R. R*. 62 Maine, 488. The law will not, therefore, imply or raise any lien on the goods attached, in favor of these plaintiffs, grounded solely on their plain neglect of duty. No one shall found a right on his own wrong.

EMERY, J. The defendant was the sheriff of Washington county. His deputy attached eighty-two cases of sardines on a writ against Peter M. Kane. At the time of this attachment, the sardines were on board ship at Eastport consigned by Kane to Hansen and Dieckman at New York, and the ship master had

delivered the usual bills of lading therefor, and Hansen and Dieckman on receipt of the bill of lading had advanced to Kane four hundred and fifty dollars on the sardines by accepting his draft for that amount.

It is conceded that, under these circumstances, Hansen and Dieckman at the time of the attachment had a valid lien on the sardines to the extent of their said advances. *Gragg* v. *Brown*, 44 Maine, 157. The attaching officer, however, did not at any time pay or tender the amount of their said lien to Hansen and Dieckman; nor did he at any time give them any written notice of his attachment as provided by R. S., c. 81, § 45.

The suit against Kane was prosecuted to judgment, and upon the execution the officer sold the sardines so attached, from the proceeds of which he satisfied the execution, and paid the balance to Kane.

It is further conceded that, if Hansen and Dieckman had given the attaching officer notice of their lien claim under R. S., c. 81, § 44, before such sale of the sardines and application of the proceeds, they could have maintained an action against the sheriff for such attachment. But no such notice was given till long afterward; and it is contended that the failure to give such notice before such sale, bars an action by the claimant against the officer for the original attachment. This is the principal question in the case.

No notice whatever at any time was required by the common law preliminary to a suit by the lienor against the attaching officer. Indeed, by the common law, there could be no lawful attachment of personal property in the situation of these sardines. *Sargent* v. *Carr*, 12 Maine, 396. The statute authorizing such attachment is R. S., c. 81, § § 43 to 46, inclusive; therefore, the lienor need only give such notice and at such time as is required by the statute. If the legislature had intended to so far abridge the common law right of action as to require a notice before the sale of the property, we think it would have made such intention clear by express words. The statute, however, does not say that the notice must be given before the property is sold by the attaching officer, nor does it limit the time

for bringing the suit. The action may be brought as before, at any time within the statute of limitations, without reference to the situation of the property, or its disposition by the officer. The notice provided is merely preliminary to the action. The only time named for the notice is that it shall precede the action by forty-eight hours. Within that limit of time, the officer can restore the property, if he then has it, or if he has it not, he can pay the claim, and in one way or the other avoid further liability.

If the officer desires to have such notice given him before he sells the property, he can give written notice of the attachment under § 45, and then if notice of the claim is not given him within ten days, he can assume there is no claim, and can sell, without fear of judgment against him. In this case, however, the officer gave no written notice of his attachment and cannot now effectually object to the delay in the notice to him of the claim.

But Hansen and Dieckman, the consignees and lienors, instead of bringing an action directly against the sheriff, libeled the vessel in the admiralty court in New York for non-delivery of the sardines according to the bill of lading, and recovered judgment for the value of their interest in the sardines, and costs. The owners of the vessel paid this judgment, and then brought the present action in their own names, against the sheriff to recover the same value.

The defendant makes two objections to the maintenance of this action by the plaintiffs, the owners of the vessel : (1,) that there is no right of subrogation inasmuch as the judge of the admiralty court in his opinion based the judgment against the present plaintiffs on the ground of their laches, in not notifying the consignees of the attachment. (2,) that the right of subrogation is equitable only, and only permits an action in the name of the original claimant.

We do not think either objection is tenable or material. The plaintiffs were common carriers, and as such, at the time of the attachment, had received and receipted for the property, and it was in their possession to be carried to Hansen and Dieckman. As such carriers they had a special ownership in the property

thus in their possession, and for which they were accountable.
They were bound to protect against third parties, the respective
interests of the consignor and consignee, and were bound to both
these for the safe delivery of the property according to the bill
of lading.

If the property had been taken from them without legal pro-
cess, they could rightfully have pursued and recaptured it, or
they could have maintained in their own names actions of replev-
in or actions for the value. If the property was taken from
their possession upon legal process against the consignor, and
they were prevented thereby from delivering it to the consignee
according to their contract, they had the same rights and reme-
dies in order that they might be able to answer over to the con-
signee for the value of his interests. Certainly, if they pay such
consignee for his interest with or without suit, they succeed to
all his rights of recapture, or rights of action. *Vermilye* v.
*Express Co.* 21 Wall. 138.

We think the plaintiffs are entitled to recover the amount of
the consignees' interest which they have paid, but are not enti-
tled to recover the costs or expenses of the suit against them.
These latter they should not have incurred. The excess in
value of the sardines over the consignees' interest, was in effect
paid to the consignor by being applied to his debt. A judg-
ment for the plaintiffs, therefore, for the amount of Hansen and
Dieckman's lien, four hundred and fifty dollars, with interest
from the date of the attachment, August 17, 1888, seems con-
sonant with law and equity, inasmuch as that sum is less than
the whole value. *Warren* v. *Kelley*, 80 Maine, 512.

*Judgment accordingly.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL,
JJ., concurred.